Good morning. May it please the Court. My name is Tracy Razvani, and I represent the plaintiff, Joel Ruiz, in this matter. Can you speak up a little bit more, please? I will try. Do you have some evidence for, I better give you a little explanatory preamble to that. I can see where you have present and not speculative future damages. If somebody breaks the lock on my door, I don't have to wait for a thief to come in and steal something before I have damages. I've got damages when I replace the lock. It looks to me as though your fellow would have damages for what he has to pay in order to protect himself reasonably from identity thieves. However, I'm not, I don't recall, and I may have just missed it because there's so much factual material, such a huge record. I don't recall any evidence of damages beyond what Gap and the outfit that promised to hold him harmless already paid or offered to pay. What is the evidence? Where do I find it? Well, this is, it's a complicated scenario because they did offer one year of credit monitoring. But the problem with their monitoring program was that they had sent out faulty pin codes, faulty access codes. And Mr. Ruiz was not able to take advantage of the... Where do I find this? That is in the record and I will have to... Where? I'd love to look at the page. It's in the factual recitation. There's actually a whole section in our factual recitation in the opening brief that goes through that. I've got pieces of the excerpts here and if there's some good stuff I probably have the page. I will get that for you. My partner is looking for that right now. But it is in the factual recitation in the opening brief. We went through the detail about how he had trouble doing... I don't care what the brief says. I want to the evidence. Uh, on, it looks like the excerpt is a record at 220-605-06. Say that again, I couldn't hear you. Uh, 220-605-06, um, 173-74, 618-832, and, uh, uh, 105-1 to 106-0. Um, we're a little specific. Isn't your basic document in the, in your affidavit or your client? Am I wrong on that? Your client said that, uh, that he tried, he spent considerable effort to try and protect    him. He tried to take advantage of GAP, but he couldn't, et cetera, et cetera. Isn't that? That, that does very well, uh, summarize his efforts. And, but he was not alone. There was, uh, several thousand people that were in the same situation, um, uh, which looks to be at, uh, 1044-46, that discussed that they had trouble signing up. The PIN codes weren't working. The access, the website wasn't working. And then they would spend, uh, 20, 30 minutes on hold trying to get someone to help them. And there was a short time period in which to apply for this.    those factors had existed, that, in fact, there was a seamless, quick way of signing up for consumer credit monitoring for a year. Mm-hmm. Why wasn't a year enough? Yes. That's the question. We have in the record that shows that the, at least at some point, the Federal Trade Commission was advising folks to spend up to five years monitoring their credit. And Mr. Reese has felt that five years is sufficient. Now, the problem with Social Security numbers is that unlike bank account numbers and credit card numbers, you can't easily change them. And the other problem with the Social Security numbers is that it can also not only lead to fraud in the financial sense, but it can lead to folks coming to the country establishing identities perhaps to work, uh, legitimately, but it can also be used by folks who want to do harm to this country to establish their identity. So to get right down to it, the damage, the concrete damages you were alleging are leaving aside the one year, the problems of signing up with their pro, or four years, four additional years of credit monitoring. We think that by then, whoever is sitting on this information, and we do have evidence in the record that generally identity thieves do sit on Social Security numbers for at least a year because companies were only offering monitoring for a year. And then thereafter is when they would start to use it, start to sell it. And so that is why we think that the one year of monitoring was insufficient. But also, um, our expert opined that the type of monitoring that was offered was also inadequate and, uh, under, uh, imperfect. Your damages basically are credit monitoring? Credit monitoring. Hard damages at this point. Okay. Time and money spent in monitoring. That is essentially what we asked for. Correct? I, I looked at your client's affidavit and what I was looking for was I called their 800 number and after I was on hold for 45 minutes and still bouncing around phone trees and on hold, uh, I got nowhere and I couldn't find it. He was in his deposition as well. Is, it's in his deposition? Correct. Back in 1890, Justice Brandeis and Warren wrote a law review article located at 4 Harvard Law Review 193. And they said that the common law had to be a flexible weapon to adapt with advancements in technology and business methods in order to protect the individual's rights. Can you give me a hint on where the deposition is? Sorry. I, I don't have, uh, a big firm staff of, um, people that do document review for me. I actually want to read this stuff myself. And since you undoubtedly have a sticky eye and tabbed and highlighting, maybe you could read the good part, read the words. I don't have it up here with me, Your Honor. I'm sorry. I, I don't have it with me. We believe the court erred in dismissing the right to privacy claim, uh, namely under the seriousness. I'm looking at Dr. Larry Poneman's declaration and I don't see the part in his declaration about a year not being enough. It was Dr. Van, it was Mr. Van Dyck. Poneman was the one who testified that it was a data theft, not a property theft. I couldn't hear some of your words. I'm sorry. It was, uh, Van Dyck's. Van Dyck? Van Dyck's. Poneman was the one who reviewed the material and determined that it was a data theft, not a property theft. Van Dyck was the one who opined that it was, in fact, um, an inadequate amount of monitoring. The seriousness of this invasion, we believe, is supported by Watkins, which looks to this, whether there's statutory authority to hold this information private. And we have identified several subsections of 1798 that do say that this information should have held private. We have cited Arakata and Arakawa and the U.S. Airways decision from Minnesota that says that the disclosure of social security numbers is an invasion of privacy. Nowhere has there been any requirement that the invasion, that the disclosure has to be intentional and yet that is seemingly what the district court has required. The UCL claim also should not have been dismissed or at least motion for relief should have been granted. The trial court held that in order to have standing to bring injunctive relief, you had to be able to show restitution. Whether a plaintiff must allege a loss of money or property is all that is required. The plain language says a person who has suffered injury in fact and has lost money or property as a result of unfair competition has standing. There's no requirement of restitution in that statute. However, it has been argued that that is what is required. However, we have cited numerous decisions where that has not been the case. All that is required is lost money or property and here the defendants do not contest that what we are dealing with is lost money. They're saying that it's damages and you need restitution for injunctive relief. However, the in-ray tobacco decision the California Supreme Court had held that 17-203 and 204 are two patently different concepts. The GNC auto body decision said that 204 should not be interpreted in light of 203 and Fulford had specifically held that restitution was not a predicate to standing. And therefore, we believe that the decision was rendered an error. The property here is the person's personal and sensitive information. Is there evidence? Reese said that what Gap offered him wasn't good enough so he bought his own protection. Is there evidence on what he bought? Does he say what he bought? I'd like to compare what he bought with what Gap offered to see if it's more expensive but better. I believe that was in his affidavit. It wasn't. It wasn't. I just looked at his affidavit. I want to know what he bought and if what they bought cost $50 and what he bought cost $75 and there's good evidence that the prudent person would buy the $75 insurance, then he's got $25 in damages and it's off to the races. That's what I'd like to see. Well, what he said was that he had to go out and buy it in the marketplace because he couldn't take advantage of the Gap. So he had to buy something to cover his monitoring. Right, but it would be nice to know if there's damages. Sometimes the car insurance company gives you $500 for the scratch on your fender and you get it repaired for $350. I don't know if that's what happened until I see the numbers. Yeah, I'm not sure we have exactly. We have not done a comparison of the Experian plan that was offered by Gap. I'm talking about this guy. This is not a big expert comparison. It's one guy named Reese. Yes, I'm not sure that there's a comparison between the product that Ruiz bought. He's your client, right? Right. I don't believe in the record there was a comparison. Mr. Reese didn't give you a receipt that you've given us for what he bought? No. I do not believe he did. That's your client? Yes. So getting back to the unpaired competition law you were just arguing, it seems as though California cases do take a rather narrower view of lost money and property than you do. I don't agree with that. I think that there's been several cases that we have cited that have looked to instances where any kind of loss of financial resources or loss of income or any kind of financial loss has been sufficient to support standing. We cited the Wittreal case, for example, which is the data breach decision, which specifically upheld a UCL claim in a very similar scenario. And we cited U-Haul and Full Ford as well. So there have been instances where financial loss has been sufficient to uphold the UCL standing. Well, it does seem to me, though, that the California cases, we're not talking about the federal cases, the California Court of Appeal cases seem to require that you have possession of something and then lose it to qualify under this particular statute. Now, your client's damages are somewhat different. He incurred expenses later. Restitution, that is required if you were seeking restitution, but I do not believe in the cases do not so hold that restitution is a predicate for standing if you're bringing an injunctive claim. And that needs to be clarified, that our UCL claim is seeking injunctive relief, not restitution. And the Wittreal case, for example, is a good example of a situation where damages for time and money spent in monitoring one's credit post-breach was sufficient to uphold the UCL standing. What are you seeking to enjoin on the UCL claim? We are seeking to enjoin GAP's proliferation of the use of the Social Security numbers. We want them to keep it for the 90 days they promise, not the seven years that they are saying that they are doing it. We want them to better their security protocols and, of course, to put in place a credit monitoring program for an appropriate amount of time. What about Mr. Reese? What do you want for your client? Does he get anything? We want the same for him. We want him to be able to – Well, he doesn't get anything if you tell GAP to do a better job in the future on other people. What do you want for Reese? We want his time to be reimbursed. How much? For his time and the effort that he has spent, the cost that he has put into credit monitoring. How much? Hours? Times? Rate? Give me a number. That would be something that he would have to present to a jury as to how much time he has spent. To get past summary judgment, he has to have already presented it as evidence. Yes, he has testified at his deposition how much time he has spent on phone calls and whatnot, and he has also put into evidence that he has bought the credit monitoring program. Look, it looks to me as though this really isn't about a client. It's just about trying to get a class action and a whole lot of injunctive relief for somebody else, but you don't have a class yet. You don't have a class certification. You've got one client who has allegedly been harmed, and as far as I can tell, you have no evidence of any harm to him, at least none that you can point me to. You just tell me it's there in a banker's box full of documents, and you don't tell me which one or tell me at argument? No, we have pointed out the harm, and the harm, and this is something that we have discussed at length in connection with the negligence claim, is that we use the terms injury, harm, and damages as if they mean the same thing. The harm here is the loss of control of his personal information, and we have pled that. And we do have, and I don't have the exact citation, but we do have in the record how much he has spent on the credit monitoring program that he bought. I just don't have that. But I can't find it, and you can't tell me. I will bring it up on rebuttal. And I see the light is yellow, so I think I will sit down, and then I'll read this. Thank you, counsel. May it please the Court. My name is Deanne Maynard, and I represent Gap, Inc., and Mr. Goldfarb represents Vanjant. And I would like to use 12 minutes of the time and reserve three minutes for him. There is a contract claim pleaded only against Vanjant. Would the clerk please run it 12 and 3? Counsel. Thank you, Your Honor. It's now been two-and-a-half years since the laptop containing Mr. Reese's information was taken, yet he can point to no misuse of that information. I'm told that it's in there somewhere. Well, there's no proof of misuse. No, sir. There's no proof of misuse. In fact, he testifies deposition. What about monitoring? How does he know?  As a legal point, monitoring damages are simply not recognizable. No, no. I'm not asking that question. I'm sorry. Your point. I was directly addressing your point. You said he can't show any damage right now. And I said without monitoring, how does he know? We really don't know whether there's damage or not. They just haven't tendered. He hasn't shown that he's suffered any damages. We don't know without monitoring. But precautions such as monitoring without actual injury are not recoverable under California law. And that's a different topic. I see. Okay. Basically, you came here and said he hasn't suffered any damages. There has been no breach of identifying information. Flat out. I'm not just saying they haven't proven it. You said there's no breach of identifying information used by third parties. My question is how do you know that without monitoring? I'm just responding to your question. Oh, I'm sorry. Well, he so testified to that. He testified as a deposition that there have been no accounts opened in his name and no one has obtained access to his account. I don't really see that that means there are no damages. Let me give you a hypo to test that. I bring my car into the shop, and when I pick it up, at the end of the day, the manager tells me, look, I've got something to tell you. We had a fellow working here. I just fired him this afternoon. I found out he was taking the keys to cars like yours and getting them copied with a dirty locksmith that he's friends with. So he may have copied your key. Now, my car has not been stolen yet. Nothing's happened to my car except that it got fixed at the shop. But a reasonably prudent person in my position would probably have to get a new lock cylinder and new keys for his car. It seems to me that's the present non-speculative damages. Putting it in terms of this particular kind of breach, it would be the reasonably prudent person, since he can't change his Social Security number, has to acquire some sort of insurance against identity theft, and that's present damages. Now, GAP offers free insurance against identity theft, which might eliminate the damages, but that still leaves me two things which look as though they're present and non-speculative. One is, do I have to spend 45 minutes bouncing around on a phone tree? For me, in my entire adult life, 45 minutes has been a really big deal to have to give to somebody else. And the other is, is what he gets for free adequate? I don't know if it sounded like it's a $50,000 limit in one year, and that sounds pretty skimpy. If somebody stole my identity, they might be able to rip off a whole lot more than $50,000, and they might delay it a little. I don't know. So what evidence is there on the adequacy or inadequacy of what was offered, relating to how much time and effort it takes to get it, and whether once you get it, it's enough? Why isn't there a genuine issue of fact on those questions? Let me address the predicate legal assumption first, Your Honor, and then I'll address the facts on record. I'd appreciate it if you'd work in the opposite order, but you can do it the way you think will be most effective. California law does not recognize monitoring costs, increased risks, to go to your judge's hypothetical. Under California law, the California courts are very clear. You cannot recover for defective pipes that haven't yet leaked. You cannot recover for asbestos in a school building that has not yet become contaminated. You cannot recover even for a defective heart valve that you have inside your body that has not yet malfunctioned. But there are cases that recognize medical monitoring costs. In California, that's true, Your Honor. The California Supreme Court has been careful to limit it to the fear of cancer context. Monitoring costs, that's the only context in which California has allowed it, and the public policy reasons there are very different from those here. Why are they? My car hypo, they would not allow me to be compensated for what I had to pay Mercedes to get me new lock cylinders. They may well not. Just like if you had defective pipes in your home, it's clear California would not let you recover for that. I beg your pardon? There's no case saying that they wouldn't, and it would just be a question of whether it's more like the pipes or more like the medical monitoring. Well, there are many cases like the pipes, and there is only one context in which they've allowed the monitoring. Why isn't this analogous, though, really? This isn't analogous because in the medical monitoring context, you're talking about a toxic tort, and the California courts have recognized that the reason they allow the monitoring claims there is because there's a risk of fatality. If you don't find out early on that you have the cancer, you may well have irreparable injury, and that's really not the case here. In this context, you may have the same thing. You may have injury that is fairly irreparable in terms of personal property damage. I mean, it's on the scale of harm, I agree with you. It may be down from cancer, but it certainly is up on the scale from a defective pipe. It's certainly not. You know, maybe we ought to certify the question and see what the California Supreme Court thinks about this. Well, two points, Your Honor. I don't think it's different from having a defective heart valve in your body, and I think that it is reparable. Financial harm to your credit and other things is reparable to my money. It's a typical reparable injury. There's nothing like having cancer that can't be cured. And California has been really careful to limit it. I don't think there's a need to certify it. But you also have different grades of cancer, too. And you can have different grades of economic harm in this circumstance as well. I mean, I'm not sure I understand the principal distinction or that the California Supreme Court wouldn't find it analogous. I read the cases carefully, and I understand your point. I'm just saying. On your question about certifying, I think that there is no need, because even if one were to make the analogy to medical monitoring, as the district court correctly concluded here, he can't meet the strict standards that the California Supreme Court has set up for that, in particular showing a significant exposure of his data. There's absolutely no evidence, and he's after extensive discovery in two and a half years, that the thief who stole this laptop has ever even viewed the information. It was on it. The laptop was password protected. And he's come forward with nothing to suggest that anyone, actually, whose information was on the laptop has ever viewed it. There are cases when people can use, clever people can use, not necessarily the social security number to get your information, but to set up complete false identities that only occur many years later. I mean, there's some, that's the additional risk in terms of, go ahead. And under California law, that's when you bring the suit. And California courts have been. I just, since California has not had a case that's like this, and we have to predict California law, I find your argument really implausible. It suggests to me that if a prankster puts super glue in the hotel door locks, there can't be any suit until the thief steals from a guest and the hotel is liable. If the key is copied by an employee in the shop, there can't be any suit for what it costs to replace the lock cylinders until somebody steals the car. You know, maybe you're right. Maybe that's the way California will go. But, frankly, I doubt it. And it would really be a help to me if you would talk about the facts that I keep asking everybody about and getting no help on. The case is Mr. Reese's case and nobody else's at this point. Yes, Your Honor. It involves concrete facts. We have thousands of pages that aren't about this case. Yes, Your Honor. And nobody wants to talk about it. I'd be happy to talk about the facts. But one more point about the certification question. And in stolen work, this court decided not to certify this very question to the California court because they recognized that under medical monitoring was a stiff standard in Arizona and so, too, is it here. Well, perhaps. But, I mean, obviously, you know, this is a newly developing problem. And we're talking about not only your case but other cases in which hundreds of thousands of bits of data have been compromised. But the policy reasons behind not doing it, as the California courts have recognized, like in the asbestos case, is because otherwise if you allow claims such as this one, you effectively require people to file suit before they've been harmed, which will lead to people who wait until they actually are harmed being time barred. Right. And that's the policy reason why not to do it. That's the question for California, not for us. But California's already decided it. In the asbestos case that we cite in our brief, the San Francisco United School District case, and California raises that in the Specter, in the Miranda case, in the medical monitoring, that's going to be a problem with their recognizing the medical monitoring cases. Well, we'll decide certification, Your Honor. I think you ought to get back to the factual question before you run out of time. Yes, Your Honor. Judge Kleinfeld, as to the facts. The plaintiff here called Gap once. How long did he spend on the phone? If I call Alaska Airlines, it's 45 minutes out of my day. I don't have that to spare. He doesn't testify how long he spent on the phone. At page 777 of the ER, he says, well, first let me just set the facts, the timeline. The laptop was stolen in September of 2007, and they were notified within nine days after. He filed suit in October. No, sorry. He filed suit in November, and he did not first attempt to sign up for any product until December. And I think that's significant for his claim that what Gap was providing was insufficient. He knew in September? He knew in September. The letter was dated September 27th. He filed suit in November, yet he didn't try to even sign up with Gap for the one-year free medical product until December the 10th. He took none of the other advice suggested in Gap's letter. Okay. All these facts are in the statute. Did he say how long he spent? Accompanying me very well, give me stupid advice to protect itself instead of me, so the fact that he didn't do what Gap said when Gap messed up isn't terribly persuasive. How long did he spend on the phone? What did they offer him? And what's the evidence about its adequacy? I'll read you what he said. On page 777, he did not try to call in October. In October 2007, question, did you have a communication with the Gap in which you disputed 12 months credit monitoring? Answer, no. Question, and why? Answer, I was unable to reach an operator or a representative. Question, because you were put on hold or what's your understanding? Answer, I believe it took too long and I was using my cell phone, so. Question, so you think happened, your best recollection, if I understand it correctly, is that soon after getting Exhibit 2, you were on your cell phone and made an attempt to contact the Gap, but were put on hold and never actually spoke to a customer representative. Correct. How many efforts did you make? Just one. Right. You never tried again. All right. Am I correct in my notes that Gap has acknowledged that when it first launched the hotline, the wait times would be up to 30 minutes? Have you acknowledged that? It may be that some people did have to hold. I think that may be. You had two people assigned to the hotline. You had 42,000 inquiries over the hotline. I don't know that the two people, I don't know of a fact of that. You had 42,000 inquiries over the hotline. We had a 24-7 hotline. You had 42,000 inquiries over the hotline. That's right, eventually, over time. That's true. 2,000 calls got escalated. What does that mean? That's correct. Anybody who raised any interest in speaking with a Gap representative, because it was a third party who was running the hotline, for any reason, there were a lot of parents who called initially whose children had applied to the Gap and who were concerned, and they called, and they were escalated. Anyone who raised any issue where they wanted to speak to someone from Gap, not just people who raised identity theft, were escalated. And 130 calls were identified as potential identity thefts? Only 130 in all. Well, there were at least some of the callers that had suffered identity thefts. We don't know whether it's from Gap or other sources. No, Your Honor. No, Your Honor. The 130 number are people who even hinted at identity theft. And then Gap tracked all of those down, and there's been absolutely no proof that anyone suffered actual identity theft as a result of the stolen laptop. Some of them were, you know, what had happened to them happened even before the date of the laptop. And Mr. Rees can't point to any either. No, I understand. I'm asking you for your documentation. No, he can't point to any either. In fact, I mean, the point here is that Mr. Rees has to actually have harm, and I think it's significant. To your point about when he purchased. Is there evidence on adequacy or inadequacy? I think it was a $50,000 policy limit, one-year limit. Is there evidence on the adequacy or inadequacy of that? Is there a genuine issue of fact about the adequacy? And is there evidence on the price of what he bought for himself compared to the price of what Gap offered? There's not the latter. There's not evidence of the comparison. His expert claims that one year is not enough, but I think it's significant that Mr. Rees himself did not actually purchase. Why isn't the fact that his expert says a year isn't enough, enough to establish a genuine issue of fact precluding summary judgment on whether a year is enough? One, laying aside my argument that it's not legally cognizable injury in California, but one, he didn't even sign up for the one year that was offered. He didn't even purchase his own product. But why, if it's true that one year isn't enough, then why doesn't that create a genuine issue of material fact as to how much is enough to ensure effective monitoring? Because he has no cognizable, no court of the 20 federal and state courts that have addressed this issue, no court has recognized that this kind of monitoring is itself a cognizable injury absent actual identity theft. And so there's no... Has any court said it's not? Yes. More than 20 federal and state courts have addressed this question and have held that this is not the kind, even if you assume it's some kind of inchoate harm to have this... Let me get back. Yes, sir. You're answering different questions. The question I have for you is, assuming that all of this is cognizable and there's an expert declaration that five years is required and you say there's one year, why isn't that a factual question? And I'm asking you to leave aside your overlay, which I understand, and if we're down to that issue, and I'm not saying we'll get there, why isn't that a factual dispute? I don't think his expert actually says that five years is not enough. Okay. Hypothetically, if he said that, does that create a genuine issue of material fact? If we agree that the cause of action exists, if we agree that if we adopt his claims, if we're down to just that, doesn't that create a... or why doesn't it create a genuine issue of material fact? I think his actions refute that he had any damage here because he didn't try to sign up for the 12-year. He tried once and didn't sign up. And then he waited 17 months to purchase his own product. You can have damages without incurring the expense. If you crash your car into somebody on the way home, your insurance company is going to pay him for the property damage to his car, even if he chooses not to get it fixed. There's no reason to believe that California would recognize this cause of action. The legislature has addressed... I don't understand that argument. Right. I mean, we peel the onion back. Right. You're answering this, giving me the same answer to all these questions. Yes. And we have to take it in different slices. Right. The slice I want here is that we say the cause of action exists. I know you disagree with that hypothetically. If we get down to the fact that it's a difference, they allege, of five years versus one year of monitoring. Their expert, let's say, hypothetically says five years require, years doesn't. My question was, does that give rise to a factual issue? Your answer was, no, because we don't think he applied, which is a factual question. And if we're down to that, my conclusion would be there's a genuine issue, but it's a real fact. I'm giving you the opportunity to persuade me otherwise. I don't think their expert's declaration can create a genuine issue of material fact. I think the fact that he didn't even sign up for the one-year policy that was offered for free refutes that there's any dispute of fact. I think the fact that when he did sign up for a policy, he only signed up for a 12-month policy is relevant to that question as well. I mean, that's all questions of evidentiary weight. So, I mean, you've answered my question as well as you can. I mean, I think it goes to show that he has no actual damage. Unless my colleagues have further questions for you, we've exhausted your time. Yes, Your Honor. Thank you, counsel. Aren't you glad the time was split up at the beginning so you still get some? Thank you very much, Your Honor. May I please support Andrew Goldfarb for Vangent? The breach of contract claim against Vangent fails for the same basic reason we believe the negligence claim fails, which is that California courts have clearly recognized that actual harm is an essential element of a breach of contract claim. Do you believe that? I would have expected your argument to focus on the contract not being for the benefit of whoever may be harmed by Gap and Vangent, but rather this just being an indemnity and hold harmless for the benefit of Gap. Your Honor, the district court didn't reach that, and that issue of third-party beneficiary has not been ---- Summary judgment, right? Yeah, and ---- So we review de novo? Yes, the ---- So it doesn't really matter what the district court decided to go off on? Yes. Well, the parties have not litigated the question as to whether or not Mr. Ruiz was an intended or incidental beneficiary. So you just want to go with this not being the kind of damages that are compensable under California law? Well, the two forms, nominal damages and mitigation, because, Your Honor, our position is what ---- If it does run to the third-party beneficiary, nominal damages would be all it would take. Isn't that right? Well, no, for a few reasons, Your Honor. First, the cases on which Mr. Ruiz relies are significantly different from this case. The Ross v. Dunn is a case where that has strong language as to nominal damages, but, in fact, the court in that case awarded actual loss of goodwill, lost profits, and other consequential damages. The Silicon Image case is a case where the court found that the plaintiff had ---- the defendant, the counterclaim plaintiff, had introduced evidence of ---- from which a jury could find actual harm. And in the Sweet v. Johnson case, that is a case that, again, cited to the dicta in Ross v. Dunn, and that was a case in which the defendant conceded that a breach had occurred. None of that has been reached here, and Mr. Ruiz has offered no case where a third-party beneficiary has been awarded nominal damages, let alone a case where a ---- where an appellate court has reversed a lower court's failure to award nominal damages. Let me back up a little bit to get some clarification. Is it your position that monitoring costs are not recognized damages in California? Your Honor, they're ---- For contract purposes at least? They are damages. However, Mr. Ruiz has attempted to bootstrap the amount of damages and the fact of mitigation damages into the harm itself and the damage itself. And so because he has no underlying harm to mitigate, this claim ---- So your question ---- I mean, your position is for purposes of this claim, there's no harm or ---- he suffered no harm or injury? That's correct, Your Honor. All right. And let me back up one more step now. I'm not clear on this. Are you conceding that this is a third-party beneficiary contract and that Ruiz is a third-party beneficiary? We're not, Your Honor. It has been briefed. The plaintiff laid out an argument on reply for the first time as to his being a third-party beneficiary. And ---- Just an issue the district court did not rule on. Correct. Because he had found that the essential element of harm ---- The court went just directly to the harm issue or the injury issue. Yes, Your Honor. Well, part of the ---- there's a different standard on breach of contract claims, even third-party context, than other claims that are raised in this case. And California seems to take a pretty liberal approach to nominal damages, at least. Now, I recognize what we said in Aguilera, but a lot of courts after Aguilera said, well, that's not true under California law and we're not the final authority on California law. It seems to me that applying California law, they're probably entitled to at least nominal damages, which give at least standing enough injury to get into actual monitoring. Your Honor, this is my time. Yes, go ahead. Even in the recent Troik case, Your Honor, the 2009 California appellate-level decision, the court recognized that harm was an essential element and confirmed that under the California Code Section 3360, the award of nominal damages is discretionary in the fact finder. And so the reference in Troik, the court in Troik referred also to the California jury instructions, which make them discretionary. And so because Mr. Ruiz has failed to present a tribal issue to get over a summary judgment, that he suffered any harm. Right. Well, it may be discretionary, but under California law, they presume if there's a breach of contract, the nominal damages may be awarded. I'm looking at the Ross case. Well, again, Your Honor, as I think I referred to earlier, in the Ross case, the court did make that statement. However, it was dictated in that case because what the court was actually awarded in that case were actual damages, and the award of nominal damages played no part in the case because it was actual lost profits, loss of goodwill. And there was no additional damage to the case, but it was a loss of goodwill and other consequential damages. Thank you, counsel. Thank you, Your Honor. I think the plaintiff had a few seconds left. I'll try to make good use of them, Your Honor. I wanted to discuss the concept of credit monitoring. This circuit in the stolen work decision looked at Arizona medical monitoring jurisprudence, which is quite similar to California's, and fashioned a credit monitoring remedy. However, the record was lacking things that caused summary judgment to be upheld. Here, the record clearly has everything the stolen work was lacking. We have evidence by an expert that it was a data theft and not a property theft. We have expert testimony that there was a four-to-one increased risk of identity theft as compared to the general population. And so California Civil Code 3333 specifically does not limit monitoring to the health field. And so I wanted to touch base on that as well. And I want to also clarify on the contract claim. He's a third-party beneficiary because the term permits or requires Vanshin to protect his information, not as part of the indemnity agreement. Thank you, counsel. Ruiz v. Gap is submitted.
judges: Kleinfeld, Tashima, Thomas